# IN THE COURT OF APPEALS OF IOWA

No. 19-1607
Filed September 23, 2020

**BRANDON DEWIELD TATE,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Black Hawk County, George L.

Stigler, Judge.

Brandon Tate appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Gerald J. Kucera, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee State.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

A woman began to leave a convenience store when Brandon Tate approached her car, displayed a gun, told her to let him into the vehicle, instructed the woman to drive away, and took her wallet. A jury found Tate guilty of second-degree robbery. On direct appeal, this court determined that substantial evidence supported the jury's finding of guilt. *See State v. Tate*, No. 15-1205, 2016 WL 3275447, at *3 (Iowa Ct. App. June 15, 2016).

Tate filed a postconviction-relief (PCR) application alleging his trial attorney was ineffective in several respects. The district court denied the application following an evidentiary hearing.

On appeal, Tate argues his trial attorney was ineffective in (1) "advising [him] not to testify"; (2) "failing to investigate"; and (3) "failing to effectively impeach" the woman. To prevail, Tate must show (1) counsel's performance was deficient and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

## I. Advice Not to Testify

As a preliminary matter, the State asserts the issue of whether Tate's trial attorney was ineffective in advising Tate not to testify was neither raised in the postconviction proceeding nor decided. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). The State concedes Tate "could have argued that PCR counsel was ineffective for failing to raise trial counsel's ineffectiveness" on this issue but asserts he failed to do so.

In his original brief to the court, Tate did indeed fail to use the hook of PCR counsel's claimed ineffectiveness to argue the ineffectiveness of trial counsel. But he raised PCR counsel's ineffectiveness in his reply brief. We are persuaded that his belated assertion was sufficient to allow us to reach the merits. *See Villa Magana v. State*, 908 N.W.2d 255, 260 (Iowa 2018) ("This case presents a situation where the ineffective-assistance argument should be considered even though it was not raised until the reply brief.").[1]

"The decision whether or not to testify belongs to the defendant, and the role of counsel is to provide advice to enable a defendant to make the decision." *Ledezma v. State*, 626 N.W.2d 134, 146 (Iowa 2001). "Counsel has a duty to advise the defendant about the consequences of testifying so that an informed decision can be made." *Id.* at 146–47.

Tate testified at the postconviction-relief hearing. He said he chose not to testify at trial after his attorney told him that if he took the stand, the State would use his criminal history to attack his credibility. In his words, "That would be common sense." Tate's attorney similarly stated he was "sure" he would have advised Tate that his prior convictions could be used to impeach him if he testified.

Tate argues his trial attorney's advice was unreasonable absent "a hearing with the Judge to determine whether his prior convictions could be used against him at trial for impeachment." In fact, counsel had a hearing before the judge.

---

[1] In *Goode v. State*, 920 N.W.2d 520, 526 (Iowa 2018), "the parties acknowledge[d] the record on appeal [was] inadequate to address the new claim of ineffective assistance of postconviction counsel." The supreme court declined to remand the claims as requested Goode but instead stated "the claims must be filed as a separate application in district court." *Goode*, 920 N.W.2d at 527. Here, the record is adequate to address the issue.

Prior to trial, the prosecutor informed the court that he intended to offer certified records of Tate's convictions for "two felony offenses," but only if the defense proceeded down a particular path in cross-examining an officer who took a statement from Tate. The defense did not proceed down that path, and the State did not offer the certified records. Because the issue of Tate's prior convictions and their potential use at trial was raised and because Tate's attorney effectively prevented the prosecutor from using any of those convictions against him, we conclude trial counsel's performance was not deficient. Accordingly, postconviction counsel could not have performed deficiently in failing to raise the issue.

## II.  *Failure to Investigate*

"Counsel is required to conduct a reasonable investigation or make reasonable decisions that make a particular investigation unnecessary." *Id.* at 145 (citing *Strickland*, 466 U.S. at 691). Tate claims his trial attorney failed to conduct a reasonable investigation because he did not interview several people who could have impugned the credibility of the woman whose wallet was stolen.

First, he asserts that counsel should have called a witness to discuss the woman's drug history. In fact, counsel raised the issue of possible drug use by the woman, stating, "I think drugs are at issue here" and "her prior drug usage is clearly relevant." He asked the trial court to reconsider a prior ruling granting the State's motion in limine to exclude this type of evidence. The trial court responded, "My ruling remains as previously ordered." The court reasoned, "There's nothing that I'm aware of that would indicate that [the woman] was under the influence of a controlled substance on the evening in question." Because Tate's attorney was

aware of and pursued the "drug use" issue, Tate's claim that counsel failed to investigate the issue necessarily fails.

Tate also asserts that counsel should have looked into the woman's sexual history. But such an inquiry would have violated the policy set forth in Iowa Rule of Evidence Rule 5.412. *Cf. Mummau v. State*, No. 12-1082, 2013 WL 2145994, at *5 (Iowa Ct. App. May 15, 2013) ("At trial, the court determined allowing this testimony would violate the rape shield statute—Iowa Rule Evidence 5.412. This rule disallows evidence of the past sexual behavior of a victim in a criminal sexual assault case absent very limited circumstances, which do not apply here. . . . We find the trial court did not abuse its discretion in disallowing the use of this portion of the deposition transcript for impeachment purposes."). That said, the woman discussed certain aspects of her past with the prosecutor to explain why she did not immediately report a sexual assault in this case. We conclude counsel did not act deficiently in failing to investigate the dated history she described.

Finally, Tate asserts his attorney should have interviewed his former girlfriend about certain email exchanges. In fact, Tate's attorney held an on-the-record discussion about a text message the girlfriend sent and the district court agreed with him that there were hearsay concerns with the message.

We conclude Tate's trial attorney was aware of and pursued the issues Tate now complains about. Accordingly, we affirm the district court's denial of this ineffective-assistance-of-counsel claim.

## III.  *Failure to Effectively Impeach the Complaining Witness*

Tate claims his trial attorney was ineffective in failing to use the entirety of the woman's deposition transcript to impeach her at trial. On our de novo review,

we disagree. As Tate acknowledges, counsel used a portion of the deposition transcript to elicit a discrepancy in her testimony. He also brought out several inconsistencies between the woman's trial testimony and two statements she gave police. Counsel highlighted most of the discrepancies that Tate asserts the deposition transcript would have underscored. For example, counsel elicited an admission from the woman that, in her first statement, she made no mention of a gun being pulled out or of a gun being put to her head. As noted, he also confirmed that she did not immediately mention a sexual assault. He obtained an acknowledgment that Tate made no threats while she was driving the car. And he elicited an admission that the woman could not identify Tate in a photo array presented by the police. The woman stated it was actually her fiancé's brother who "used to live with [Tate]" who "told [her] who it was." Counsel reasonably could have decided that the jury might lose sight of these damaging admissions if he attempted to undermine less critical aspects of the woman's testimony. We affirm the postconviction court's denial of this claim and of Tate's postconviction-relief application.

**AFFIRMED.**